Tracy Glenn **GALLUPS**, Appellant,

v.

The **STATE** of Texas.

No. **PD–897–03**.

Court of Criminal Appeals of Texas.

Dec. 8, 2004.

9.  802 S.W.2d 686 (Tex.Crim.App.1990).

10. *Id.* at 687.

11. *Id.*

12. *Id.*

Lorin M. Subar, Dallas, for Appellant.

Manuel Gonzalez, Asst. District Atty., McKinney, Matthew Paul, State's Atty., Austin, for State.

## *OPINION*

HERVEY, J., delivered the opinion of the Court in which WOMACK, KEASLER, HOLCOMB and COCHRAN, JJ., joined.

In this case, appellant was convicted of a felony driving while intoxicated offense. He challenges the legality of his warrantless home arrest. We decide that this arrest did not violate state law.

The record reflects that appellant filed a motion to suppress, challenging the legality of his warrantless home arrest. Appellant claimed in his motion to suppress that this arrest was illegal under state law solely because it did not meet the exception to the warrant requirement set out in Article 14.04, TEX.CODE CRIMS. PROC., which provides:

> Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused.

Appellant claimed at the beginning of the suppression hearing, however, that the police "entry into [appellant's] home, is what's at question, and the subsequent arrest that took place there." The issue of whether appellant consented to the police entry into his home (and not whether he was about to escape) was the main issue litigated at the suppression hearing.[1]

The evidence presented at the suppression hearing shows that the police had probable cause to believe that appellant was intoxicated when in the middle of the afternoon appellant wrecked his truck, abandoned it, and "bleeding from the mouth" walked home, which was a short distance away. *See Gallups v. State*, 104 S.W.3d 361, 363–65 (Tex.App.-Dallas 2003). Very soon thereafter, a police officer went to appellant's home to investigate. *See id.* This officer testified that, while outside, he saw appellant with blood around his mouth standing behind a full-length glass storm door and that appellant eventually motioned for the officer to come inside. *See id.*

Q. [PROSECUTION]: Officer, after you exited the vehicle and started walking up to the house and saw [appellant], what happened next?

A. [OFFICER]: As I approached the door, I asked him if he'd step outside the door. And instead he motioned for me to come forward, and I pushed the door open.

Q. How did he do it? Can you describe for the court how he did it?

A. To the best of my recollection, I was standing to the left side of the doorway, and I asked him. And I just reached out and opened the door, and I had to step around and walk around the door as it opened up.

Q. Did he ever tell you you couldn't come in?

A. No.

Q. How did he motion for you to come in?

A. He just kind of indicated (demonstrating).

Q. That meant open the door?

For purposes of the record, you have your hand being extended out and coming back toward you.

A. Yes.

The officer went inside appellant's home and arrested him shortly after corroborating other information he had that appellant was intoxicated and was the driver of the wrecked truck. *See id.* Appellant testified at the suppression hearing and denied that he invited the officer to come inside his home. *See id.* Appellant claimed on direct examination that the officer just walked inside his home and asked him if he had been driving his truck to which appellant replied that he had not.

Q. [DEFENSE]: Were you present when Officer Perkins arrived at your home?

A. [APPELLANT]: Yes.

Q. Where were you in the home?

1. It is, therefore, clear that whether appellant consented to the police entry into his home was raised and preserved in the trial court. *See* Article 14.05(1), Tex.Code Crim. Proc., (police may not enter home to make warrantless home arrest unless a person who resides in the home consents to the entry). The concurring opinion claims that the evidence presented at the suppression hearing could have been relevant to other claims under the federal and state constitutions. Appellant, however, raised no constitutional claims in the trial court. The **only** claim raised and litigated at the suppression hearing was whether appellant consented to the police entry into his home. And, no authority exists to support the proposition that we may not look to the issue actually litigated at a suppression hearing to determine what issues and claims were preserved.

A. I was sitting on the couch next to my mother.

Q. All right. Sitting on the couch. Could you see the front door where you were seated?

A. I could see the wooden door.

Q. But could someone on the outside of that door necessarily see you?

A. No.

Q. All right. When Officer Perkins arrived, were you standing in that glass doorway?

A. No, sir.

Q. Did you open the door for Officer Perkins?

A. No, sir.

Q. Did you make any motions towards Officer Perkins to invite him into your home?

A. No, sir.

Q. When was the first time that you physically saw Officer Perkins at your house?

A. He stepped into the doorway, and when he did, he seen me and asked me to come outside and I refused.

Q. You told him no?

A. Yes.

Q. All right. Did you have any other conversations with Officer Perkins?

A. Yes. He walked over to me where I was at and asked me if I was driving a vehicle up the street, and I told him, no, I wasn't; that she might have been, and he asked my mother if she was driving.

Appellant later contradicted himself on cross-examination when he testified that it took him five minutes to walk from his wrecked truck to his home.

Q. [PROSECUTION]: Now, one of the questions [defense counsel] asked you was whether or not you think the Officer had time to go-talk to the constable or talk to a magistrate before coming to your house, and you said, well, I had enough time. How long did it take you to get from the truck to your house?

[APPELLANT]: Do I have to answer that?

[DEFENSE COUNSEL]: Answer his question.

A. [APPELLANT]: Probably five minutes.

Q. [PROSECUTION]: It takes you five minutes to go from your truck over on College Street to your house on Leland; is that right?

A. Yes.

Immediately following the suppression hearing, the trial court denied appellant's motion to suppress without specifying its reasons for doing so. On direct appeal, appellant claimed that his warrantless home arrest was "tainted" because the police entry into his home was illegal under state law. *See Gallups,* 104 S.W.3d at 363. In a 2–1 decision, the Court of Appeals rejected this claim. *See id.* Apparently applying the well-settled rule that an appellate court can affirm a trial court's decision if it is correct on any theory of law applicable to the case,[2] the Court of Appeals decided that appellant's warrantless home arrest met the exceptions to the warrant requirement set out in Article 14.05(1) and Article 14.03(a)(1), Tex.Code Crim. Proc. *See Gallups,* 104 S.W.3d at 368 n. 8.[3]

---

**2.** *See State v. Ross,* 32 S.W.3d 853, 855–56 (Tex.Cr.App.2000).

**3.** With respect to the issue of whether this Court should address the Article 14.05(1) issue, it is not dispositive that appellant may

not have preserved this issue in the trial court (*but see* footnote 1) since the Court of Appeals properly addressed it under *Ross,* 32 S.W.3d at 855–56, and we granted discretionary review on it. *See Arline v. State,* 721 S.W.2d 348, 353 (Tex.Cr.App.1986) (this Court's "re-

We exercised our discretionary authority to review this decision. On discretionary review, appellant claims that his warrantless home arrest violated state and federal constitutional law and was also not authorized by any provision in Chapter 14 of the Texas Code of Criminal Procedure. The grounds upon which we granted discretionary review state:

1) Petitioner's arrest in his residence was in violation of the Tex.Code Crim. Proc. Art. 14.01–14.05.

2) Petitioner's arrest in his residence was in violation of Tex. Const. art. I, § 9.

3) Petitioner's arrest in his residence was in violation of U.S. Const., Amend. IV.

4) The error committed by the trial court contributed to Petitioner's conviction.

■ Appellant's constitutional claims (grounds two and three) were not raised in the trial court or in the Court of Appeals which did not address these claims either. We, therefore, exercise our discretion to dismiss them as improvidently granted. *See Leday v. State*, 983 S.W.2d 713, 714, 725 (Tex.Cr.App.1998) (significant decision addressing issue not raised by either party on discretionary review) and at 730

(McCormick, P.J., dissenting) (this Court has discretion to address issues not raised on discretionary review); *but see Arline*, 721 S.W.2d at 353.

■ We decide that appellant's warrantless home arrest was authorized by Article 14.05(1) which provides:

> In each case enumerated where arrests may be lawfully made without warrant, the officer or person making the arrest is justified in adopting all measures which he might adopt in cases of arrest under warrant, except that an officer making an arrest without a warrant may not enter a residence to make the arrest[4] unless:
>
> (1) a person who resides in the residence consents to the entry . . .

First we address whether the record supports a finding that appellant consented to the police entry into his home. *See Reyes v. State*, 741 S.W.2d 414, 430 (Tex. Cr.App.1987) (issue of whether consent to search was valid is "a question of fact to be determined from the totality of the circumstances"); *see also Guzman v. State*, 955 S.W.2d 85, 87–89 (Tex.Cr.App.1997) (setting out appellate standards of review of trial court's rulings on questions of fact and questions of law). The dissenting

---

view is limited to those points of error decided by the courts of appeals, included in petitions for discretionary review and granted as grounds for review"). In addition, the legality of appellant's warrantless home arrest cannot be intelligently resolved without addressing Article 14.05(1) which expressly applies to home arrests. *See State v. Brabson*, 976 S.W.2d 182, 200 (Tex.Cr.App.1998) (McCormick, P.J., concurring) (discretionary review courts may appropriately decide all questions of law predicate to an intelligent resolution of the issue upon which discretionary review is granted); *see also Cuyler v. Sullivan*, 446 U.S. 335, 342 n. 6, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); *Vance v. Terrazas*, 444 U.S. 252, 258, 100 S.Ct. 540, 62 L.Ed.2d 461 (1980). Deciding that appellant's warrantless home arrest

is legal solely because it meets the Article 14.03(a)(1) exception to the warrant requirement could leave the police with the impression that warrantless home arrests are legal under state law even though these arrests do not comply with Article 14.05's heightened privacy protections.

4. In this case, the record does not clearly reflect whether the arresting officer entered appellant's home "to make the arrest." It appears that the officer may have entered the home for investigative purposes after which the decision "to make the arrest" was made. We will assume, however, that the officer entered appellant's home "to make the arrest."

opinion in the Court of Appeals asserts that the prosecution did not meet its burden to prove by clear and convincing evidence that appellant consented to the police entry into his home. *See Gallups,* 104 S.W.3d at 371 (Bridges, J., dissenting). This dissenting opinion asserts that the prosecution did not meet this burden with the officer's testimony that appellant "motioned for [the officer] to come forward" and "just kind of indicated" and with the other evidence that the dissenting opinion characterized as "some unspecified hand gesture" by appellant. *See id.*

This, however, does not take into account the other evidence from the officer demonstrating how appellant motioned for him not only to "come forward" but also to "come in." And, the evidence does not show just "some unspecified hand gesture." The evidence shows appellant's "hand being extended out and coming back toward him."[5] These facts also distinguish this case from the cases cited in the dissenting opinion. *See id.*[6] On this record, the trial court was in the best position to decide whether appellant consented to the police entry into his home. *See Guzman,* 955 S.W.2d at 87 (standard of appellate review often is determined by which judicial actor is in a better position to decide the issue).

Having determined that the record supports a finding that appellant consented to the police entry into his home, the next issue under Article 14.05 is whether appellant's warrantless arrest falls within another provision in Chapter 14 of the Texas Code of Criminal Procedure "enumerat[ing] where arrests may be lawfully made without a warrant." And, we decide that appellant's warrantless arrest falls within Article 14.03(a)(1) which, in relevant part, provides:

(a) Any peace officer may arrest, without warrant:

(1) persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some ... breach of the peace ...

We have held that driving while intoxicated is a breach of the peace. *See Romo v. State,* 577 S.W.2d 251, 253 (Tex.Cr.App. 1979). And, in *Dyar v. State,* we held that a hospital, where the defendant was arrested for driving while intoxicated soon after he was transported there after an accident, was a "suspicious place" under Article 14.03(a)(1). *See Dyar v. State,* 125 S.W.3d 460, 468 (Tex.Cr.App.2003). Similarly, under the facts of this case, appellant's home, where he was arrested for driving while intoxicated soon after he walked there after abandoning his wrecked truck at the scene of an accident, was a "suspicious place" under Article 14.03(a)(1) and under this Court's reasoning in *Dyar.*

Article 14.03(a)(1)'s additional requirement of the existence of circumstances showing that persons like appellant have been guilty of some breach of the peace, and Article 14.05(a)(1)'s requirement that someone who lives in the home consent to the police entry into the home, which also

---

5. Q. [PROSECUTION]: How did [appellant] motion for you to come in?

A. [OFFICER]: He just kind of indicated (demonstrating).
Q. That meant open the door?
For purposes of the record, you have your hand being extended out and coming back toward you.

6. *See Roth v. State,* 917 S.W.2d 292, 300 (Tex. App.-Austin 1995, no pet.) (no clear and convincing evidence of consent where the defendant "looked as though" he wanted the police to follow him into his residence); *Green v. State,* 666 S.W.2d 291, 293 (Tex.App.-Houston [14th Dist.] 1984, no pet.) (no consent from singular act of the defendant opening her front door).

must be satisfied for an arrest to be valid under state law, are more protective than the heightened protections that the Fourth Amendment already provides against physical entry into a person's home. *See generally Welsh, v. Wisconsin*, 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984). Thus, deciding, under these circumstances, that a home can meet the "suspicious place" requirement of Article 14.03(a)(1) is not inconsistent with these heightened privacy protections under state and federal constitutional law. In other words, the circumstances surrounding appellant's warrantless home arrest raised a reasonable belief that appellant had committed a breach of the peace and that exigent circumstances (the need to ascertain appellant's blood-alcohol level) existed to justify appellant's immediate arrest. *See Dyar*, 125 S.W.3d at 468–71 (Cochran, J., concurring) ("suspicious place" provision in Article 14.03(a)(1) should be analyzed under the organizational principle of exigent circumstances and any "place" may become suspicious when a person at that location and the accompanying circumstances raise a reasonable belief that the person has committed a crime and exigent circumstances call for immediate action or detention by the police); *cf. Welsh*, 466 U.S. at 753–54, 104 S.Ct. 2091 (exigent circumstance of need to ascertain the defendant's blood-alcohol level not sufficient to justify the defendant's warrantless home arrest for drunk driving because state law de-fined this offense as a "noncriminal, civil forfeiture offense for which no imprisonment [was] possible").[7]

Our decision in this case does not give the police *carte blanche* authority to unilaterally make warrantless home arrests. Our state statutes strike a proper balance between the competing interests of privacy and legitimate police investigation of crimes that constitute a breach of the peace.

Our disposition of ground one makes it unnecessary to address ground four, which we also dismiss. The judgment of the Court of Appeals is affirmed.

PRICE, J., filed a concurring opinion.

MEYERS and JOHNSON, JJ., concurred.

KELLER, PJ., dissented.

PRICE, J., concurring.

The majority addresses two questions in this case: The first is whether the police had consent to enter the appellant's home to investigate a one-car accident that occurred a few blocks from the home. The second is whether the officer had the authority, under an exception to the warrant requirement under the Code of Criminal Procedure, to arrest the appellant in the absence of a warrant. Because the appellant did not preserve the first question for appellate review, I would not address it.

---

**7.** *Welsh* decided that a nighttime, warrantless home arrest of a defendant for drunk driving shortly after he ran his car off the road and walked home violated the Fourth Amendment because Wisconsin law defined a first drunk-driving offense as a minor, nonjailable civil violation. *See Welsh*, 466 U.S. at 743–48, 753–55, 104 S.Ct. 2091. Our state law, however, defines a first drunk driving offense as a jailable criminal offense. *See* § 49.04(b), Tex. Pen.Code. (first DWI offense is Class B misdemeanor with a minimum term of confinement of 72 hours); § 12.22, Tex.Pen.Code (maximum punishment for Class B misdemeanor is 180 days in jail and a $2,000 fine). Therefore, to the extent that *Welsh* has any bearing on what constitutes exigent circumstances under state law, it would not foreclose deciding that the need to ascertain appellant's blood-alcohol level was an exigent circumstance justifying his warrantless home arrest. Of course, we express no opinion on whether appellant's warrantless home arrest violated the Fourth Amendment.

The appellant filed a motion to suppress in which he claimed that his arrest was illegal because "it was conducted without a valid warrant and no exception to the warrant requirement applied." He went on to discuss Code of Criminal Procedure Article 14.04[1] and case law interpreting it. He then argued that the illegally obtained evidence was not admissible under Code of Criminal Procedure Article 38.23 and that the evidence was the fruit of the poisonous tree. The appellant never mentioned Article 14.05, and he did not claim that the officer's entry into his home was illegal.

The trial court held a hearing on the appellant's motion. During the hearing, two officers who had been involved in the investigation and arrest testified.

During his opening statement, defense counsel summarized the facts of the case and then said "The police sometime thereafter, found an insurance card in the vehicle and went into the home, to the address that was on the insurance card, and then made entry into the home, is what's at question, and the subsequent arrest that took place there."[2] The State made a short statement, summarizing the facts that defense counsel had not covered. The trial court swore the witnesses and heard testimony.

Officer Robbie Butler testified that he arrived on the scene of a one-vehicle accident on a December afternoon. A Dodge Ram Charger had crashed into a utility pole, and wires lay on the ground across the road. The driver of the Dodge was missing. A man who had seen the accident and who was waiting in his car for police to arrive spoke with Butler about the accident and described the driver of the Dodge.

The witness described the driver as a white male who was wearing a gray sweat shirt and blue jeans. The driver had a white spot in his hair and blood near his mouth. The witness said that he could smell alcohol on the driver and showed Butler the direction in which the driver had walked when he left the scene.

Butler checked the Dodge to make sure that no one was inside. Then he checked the insurance card in the glove box. The card gave the appellant's name and address, which was about three blocks from the scene of the accident and in the direction that the witness said the driver had gone. Butler contacted Corporal Bill Perkins, who was en route. He gave Perkins a description of the driver and the address listed on the insurance card.

Perkins testified that he drove to the address, and as he walked up to the glass storm-door, he saw the appellant, who matched the physical description of the driver that he had received from Butler. Perkins asked the appellant to step outside to talk to him. Instead of answering or coming out, the appellant motioned Perkins forward.[3] Perkins opened the door and walked into the house.

Perkins asked the appellant if he had been involved in an accident. The appellant claimed that he had let his mother, who was present in the room, drive the Dodge. The appellant's mother denied

---

1. Article 14.04 states the following:
   Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused.

2. *Sic passim.*

3. During the hearing on the motion to suppress Perkins demonstrated the gesture. His hand was extended, and then he moved his hand back toward himself.

driving the Dodge, however. Perkins noticed that the appellant's speech was slurred and that he had trouble pronouncing some of his words. Perkins asked the appellant if he had anything in his pocket. The appellant started walking toward Perkins "in a defensive stance" and said that he had a gun and a knife. When the appellant approached Perkins, the officer could smell alcohol on him. The appellant reached for Perkins, after which Perkins physically restrained him. Perkins radioed dispatch and had a unit sent to the appellant's address to pick him up.

The appellant needed assistance to walk. He was attended by a medical unit, and Perkins returned him to the scene of the accident before he was transported to the jail.

The appellant's mother testified that she had been sitting in a recliner and that the appellant had been at home sitting on the couch for about twenty-five minutes when Perkins came to the door. She said that, without knocking, Perkins opened the door and entered her home. She said that Perkins questioned the appellant. During the questioning, she said that she left the room for a few minutes. When she returned her son was on the floor and Perkins was handcuffing him. She also said that, although her son was living in the home, he did not have the authority to consent to allow someone enter her home.

The appellant testified that he had been sitting on the couch when Perkins arrived at the door. He said that Perkins stepped into the doorway and asked him to come outside. The appellant declined, and Perkins came inside and questioned him. The appellant said that he asked Perkins if he had a warrant, and Perkins did not respond. After questioning the appellant, Perkins arrested him and took him outside.

While the State was cross-examining the appellant, the trial judge interrupted the testimony and told the parties that he had a plea agreement to preside over.

[Court]: Say, listen, I'm about to start trying another case. How much time do you need?

[State]: Well, Your Honor, about five minutes.

[Court]: This case is in recess, and I'll call you guys back.

All right. Let's go—let's do this plea.

[Defense]: Judge, are you calling us back today?

[Court]: I'll call you back today. But let me tell you something, I already know what I'm going to do here. So if you guys want me to tell you what I'm going to do, or come back, what would you rather do?

[State]: Well, if it's the court's position that the decision has already been made at this point in time, the State would pass the witness.

[Defense]: We rest.

[Court]: Both sides rest and close. Would you like to be heard?

[Defense]: I'm asking you to suppress anything gained after the officer entered the home.

[Court]: The Motion to Suppress is denied.

On direct appeal, the appellant claimed, among other things, that the motion to suppress should have been granted on the basis of Article 14.05. But this claim was not preserved for review.

Not long ago, in a unanimous opinion, we noted that to preserve a claim for review, the defendant must make a timely and *specific* objection. " 'except for complaints involving fundamental constitutional systemic requirements ..., all other complaints ... are waived by failure to comply with Rule [of Appellate Procedure]

33.1.' " [4] And even more recently, regarding preservation of error, the Court said,

> Texas Rule of Appellate Procedure 33.1(a)(1)(A) provides, in relevant part, that for a complaint to be presented on appeal, a timely request, objection, or motion must have been made to the trial court, which "states the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, *unless the specific grounds were apparent from the context.*" Texas Rule[ ] of Evidence 103(a)(1) contains similar guidelines, providing that "a timely objection or motion to strike [must appear] on the record, stating the specific ground of objection, *if the specific ground was not apparent from the context.*" Additionally, it is well settled that the legal basis of a complaint raised on appeal cannot vary from that raised at trial.[5]

I see no reason that these principles should not be applied in this case.

The appellant did not mention Article 14.05 in his motion to suppress. He did not mention Article 14.05 during the hearing on his motion to suppress. The appellant was given an opportunity to be heard at the end of the hearing. Instead of saying that he wished to add Article 14.05 as a basis for the motion to suppress, defense counsel said, "I'm asking you to suppress anything gained after the officer entered the home."

During his opening remarks, defense counsel said that there was some question about the entry into the home. Also, there was some evidence admitted during the motion to suppress hearing that could have been relevant to a claim under Article 14.05, it was not sufficient to preserve review. But the same statement and evidence could be relevant to the issue of consent under the Fourth Amendment to the United States Constitution or Article 1, Section 9 of the Texas Constitution. Did the appellant intend to preserve a claim under Article 14.05; Article 1, Section 9; or the Fourth Amendment? All of them? We cannot tell. More importantly, neither the trial court, nor opposing counsel, could tell.

We do not look at the evidence admitted during a suppression hearing to discern what the parties claims were. Trial courts, opposing counsel, and reviewing courts should not have to guess about what a defendant is claiming. In this case, the appellant made no mention that he wanted to invoke Article 14.05. As a result, I would conclude that the appellant has not preserved the claim for appellate review, and I would not review the merits of the claim.

### III. Conclusion

I agree with the majority that the appellant's arrest was authorized under Article 14.03(a)(1). I would not address the appellant's claims under Article 14.05. I concur in the judgment.

---

4. *Mendez v. State*, 138 S.W.3d 334, 339 (Tex. Crim.App.2004) (quoting *Ibarra v. State*, 11 S.W.3d 189, 197 (Tex.Crim.App.1999)).

5. *Heidelberg v. State*, 144 S.W.3d 535, 537 (Tex.Crim.App.2004) (Meyers, J., joined by Keller, P.J., and Womack, Keasler, Hervey, and Cochran, JJ.) (citations omitted) (emphasis added in opinion quoted).