# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00856-CV

**Department of Public Safety, Appellant**

**v.**

**Elisa Suarez, Appellee**

### FROM COUNTY COURT AT LAW NO. 1 OF HAYS COUNTY
### NO. 13379-C, HONORABLE ANNA M. BOLING, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

The trial court reversed an administrative order authorizing the Department of Public Safety (DPS) to suspend the driver's license of Elisa Suarez for a period of two years. The suspension was based on Suarez's refusal to submit to the taking of a specimen following her arrest for the offense of driving while intoxicated. *See* Tex. Transp. Code Ann. § 724.035(a) (West 2011). DPS appeals the trial court's reversal. In three issues on appeal, DPS argues that substantial evidence supports the administrative findings that (1) the arresting officer had probable cause to arrest Suarez for DWI, and (2) that Suarez had a prior "alcohol-related contact," which was required to enhance her period of suspension from 180 days to two years. *See id*. § 724.035(b). We will reverse the trial court's order and render judgment reinstating the decision of the administrative law judge (ALJ).

# BACKGROUND

No live testimony was presented at the administrative hearing. Instead, the ALJ considered the police report of Officer Eric Charleswell of the San Marcos Police Department, the officer who had arrested Suarez. According to Charleswell's report, at approximately 6:07 a.m. on February 6, 2010, he was dispatched to an apartment to investigate a report of an intoxicated and injured female who had been involved in an automobile accident. Upon Charleswell's arrival at the apartment, he made contact with Francesca Flores, who was bleeding from a laceration on her right forearm. According to Charleswell, Flores, who exhibited signs of intoxication, "stated that her friend Elisa Suarez was driving her home and crashed her vehicle in a ditch." When Charleswell asked Flores what had happened, "she was unsure on what caused the collision but stated that Suarez was driving."

Charleswell next made contact with Madeline Christine Rackley, who was also in the apartment. Rackley told Charleswell that she had met Suarez, Flores, and Jeremy Schuessler at a bar for drinks. According to Charleswell, "Rackley stated that she was unsure how much Suarez had to drink prior to her arriving but observed Suarez drink several Vodka Tonics" and that they left the bar and went to a tavern "where she observed Suarez drinking beer." After leaving the tavern, "they all went to Schuessler's apartment" where "they played beer pong and played at least two games from each side." This meant "that they had at least two beers each." Rackley also told Charleswell that Suarez had agreed to drive Flores home and that, "just after they left Schuessler's apartment, Suarez crashed the car."

2

After speaking with Rackley, Charleswell attempted to interview Schuessler, but Schuessler "was incoherent and at times would stop speaking with a dazed look in his eyes." Charleswell then resumed speaking with Rackley, who was now sitting on a bed in Schuessler's bedroom. Charleswell observed the outline of a second person "completely under the cover[s] on the right side of the bed." Charleswell asked Schuessler who was under the covers, and Schuessler told him that it was Suarez. Charleswell "pulled the cover[s] off of Suarez and asked her why she did not come out to talk to me. . . . Suarez stated that she was asleep and did not know that I was in the room." Charleswell observed that "Suarez's clothing was wet and she had debris from the accident scene still in her hair."

When Charleswell asked Suarez about the accident, "she stated that at approximately 0400 hours she was on Sessoms [Street] taking Flores home when a vehicle came into her lane causing her to veer off of the road and crashing her car." Charleswell, who was approximately five feet away from Suarez while they were talking, "could smell the odor of an intoxicating beverage on her breath" and noticed that her eyes "were red and glossy." When Charleswell asked Suarez how much she had to drink, she told him that she had two vodka tonics and a light beer "but quit drinking at 0200 hours." Suarez also told Charleswell that she did not call EMS following the accident because "her phone was damaged in the crash" and "that Flores did not want her to call for help, so [Suarez] went to bed." Charleswell then escorted Suarez out of the apartment, asked her if she would be willing to perform sobriety tests, and, after she refused, placed her under arrest for DWI. Suarez subsequently refused to provide a sample of her blood.

3

Also admitted into evidence at the hearing was Suarez's driving record. In a section of the record entitled, "Enforcement Action History," Suarez had three reported "actions": (1) the pending suspension based on Suarez's most recent refusal; (2) a 2009 refusal-based suspension; and (3) a 2007 suspension based on Suarez having a "detectable" amount of alcohol in her system when she was under 21 years of age. At the hearing, DPS argued that the length of Suarez's suspension should be enhanced as a result of the 2009 suspension.

After hearing argument from the parties and taking the matter under advisement, the ALJ entered the following "findings of fact":

1) On February 6, 2010, reasonable suspicion to stop the Defendant existed in that when [the] officer was investigating the accident Defendant admitted to driving the motor vehicle when it ran into a ditch on Sessoms Street [in] Hays County, Texas.

2) On the same date, probable cause to arrest the Defendant existed in that there was probable cause to believe that Defendant was operating a motor vehicle in a public place while intoxicated, because in addition to the facts in No. 1, Officer observed the Defendant with an alcoholic beverage odor, red glossy eyes, hostile, driving the vehicle when involved in a one car accident; Defendant refused to perform field sobriety tests.

3) Defendant was operating a motor vehicle in a public place in Hays County, Texas.

4) Defendant was placed under arrest and was properly asked to submit a specimen of breath or blood.

5) After being requested to submit a specimen of breath or blood, Defendant refused.

6) Defendant's argument was that the classic indicators that would be present in a normal DWI arrest were absent in this case. Many of these factors, such as performance on the field sobriety tests, were absent as a direct result of Defendant's conduct, i.e., her refusal to participate in any of these tests.

4

Where many of the missing factors are due to Defendant's conduct, the Officer could reasonably consider that conduct as part of [the] totality of the circumstances. *See State v. Garrett*, 22 S.W.3d 650, 659 (Tex. App.—Austin 2000).

7)      Defendant has had one or more alcohol or drug related enforcement contacts during the ten years preceding the date of Defendant's arrest as is indicated on Defendant's driving record; contrary to defendant's assertion that the driving record did not show that defendant was under arrest when she refused, the arrest is statutorily necessary for an ALR refusal.

Based on the above findings, the ALJ concluded that DPS proved the statutory requirements for an administrative license suspension and ordered that DPS was authorized to suspend Suarez's license for a period of two years.

Suarez appealed to the trial court. At the hearing before the trial court, Suarez made two arguments. First, Suarez contended that Charleswell did not have probable cause to believe that she was driving while intoxicated. Second, Suarez asserted in the alternative that the length of her suspension should not have been enhanced because, in her view, DPS presented no evidence of a prior "alcohol-related contact." The trial court, after taking the matter under advisement, entered an order reversing the ALJ's decision and ordering Suarez's suspension rescinded. This appeal followed.

**STANDARD OF REVIEW**

"[C]ourts review administrative license suspension decisions under the substantial evidence standard." *Mireles v. Texas Dep't of Pub. Safety*, 9 S.W.3d 128, 131 (Tex. 1999). A court applying the substantial evidence standard of review may not substitute its judgment for that of the agency. *Mireles*, 9 S.W.3d at 131. The issue for the reviewing court is not whether the agency's

5

decision was correct, but only whether the record demonstrates some reasonable basis for the agency's action. *Id*. Courts must affirm administrative findings in contested cases if there is more than a scintilla of evidence to support them. *Id*. However, the question of "whether there is substantial evidence to support an administrative decision is a question of law, and on questions of law, neither the trial court nor the administrative law judge is entitled to deference on appeal." *Texas Dep't of Pub. Safety v. Alford*, 209 S.W.3d 101, 103 (Tex. 2006). Accordingly, we review de novo the trial court's determination of whether substantial evidence supports the administrative decision. *See Texas Dep't of Pub. Safety v. Gonzales*, 276 S.W.3d 88, 91 (Tex. App.—San Antonio 2008, no pet.).

## ANALYSIS

Because the trial court did not specify the basis for its reversal, DPS provides arguments attacking both theories for reversal that Suarez presented to the trial court. In its first and third issues, DPS argues that there was substantial evidence supporting the ALJ's finding that Charleswell had probable cause to believe Suarez had been driving while intoxicated. In its second issue, DPS contends that there was substantial evidence supporting the ALJ's finding that Suarez had a prior "alcohol-related contact."

We first address the evidence supporting the finding that Suarez's license should be suspended. In a case in which DPS seeks to suspend an individual's license based on a refusal to submit a specimen, DPS must prove four things at the administrative hearing: (1) reasonable suspicion or probable cause existed to stop or arrest the person; (2) probable cause existed to believe that the person was operating a motor vehicle in a public place while intoxicated; (3) the person

6

was placed under arrest by the officer and was requested to submit to the taking of a specimen; and (4) the person refused to submit to the taking of a specimen on request of the officer. Tex. Transp. Code Ann. § 724.042 (West 2011). Suarez challenged only the second requirement, i.e., the existence of probable cause to believe that she was driving while intoxicated.

"Probable cause exists where the police have reasonably trustworthy information, considered as a whole, sufficient to warrant a reasonable person to believe a particular person has committed or is committing an offense." *Hughes v. State*, 24 S.W.3d 833, 838 (Tex. Crim. App. 2000) (citing *Guzman v. State*, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997)). "Probable cause requires more than mere suspicion but far less evidence than that needed to support a conviction or even that needed to support a finding by a preponderance of the evidence." *Id*. In other words, DPS did not have to prove that Suarez was in fact driving while intoxicated, only that probable cause existed to believe that she was. *See Texas Dep't of Pub. Safety v. Butler*, 110 S.W.3d 673, 677 (Tex. App.—Houston [14th Dist.] 2003, no pet.); *see also Church v. State*, 942 S.W.2d 139, 140 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd) ("The statute authorizing the suspension hearing neither requires nor empowers the ALJ to decide the ultimate issue of whether appellant was actually operating a motor vehicle while intoxicated.").

In this case, the police report provides substantial evidence supporting the ALJ's finding that Charleswell had probable cause to believe that Suarez had been operating a motor vehicle in a public place while intoxicated. In the report, Charleswell states that when he arrived at the apartment where Suarez was found, both Flores and Rackley informed him that Suarez had been driving the vehicle that had crashed. Additionally, Rackley informed Charleswell that

7

she had observed Suarez drinking beer and "several Vodka Tonics" at two bars on the night of the accident and that Suarez had been playing "beer pong" at Schuessler's apartment prior to driving Flores home. Moreover, when Charleswell encountered Suarez at the apartment, Suarez admitted that she had been drinking vodka and beer on the night of the accident and that she was driving the car on Sessoms Street when it crashed. Suarez claimed that she had stopped drinking at approximately 2:00 a.m. and that the crash did not occur until approximately 4:00 a.m. However, even assuming Suarez's approximations of time are accurate, Charleswell could have reasonably concluded that Suarez was nevertheless intoxicated at the time of the crash, particularly in light of his observations that Suarez had "the odor of an intoxicating beverage on her breath," that her eyes "were red and glossy," and that her "clothing was wet and she had debris from the accident scene still in her hair." Also, when Charleswell found Suarez, she was "completely" under the covers in a bed and admitted that she had not called 911 to report the accident. Both of these facts, Charleswell could have reasonably concluded, were suspicious circumstances tending to show that Suarez had been driving while intoxicated and had wanted to prevent authorities from discovering that fact. We conclude that the above evidence, considered in its totality, provides a reasonable basis for the ALJ's finding that Charleswell had probable cause to believe that Suarez was driving while intoxicated. *See Butler*, 110 S.W.3d at 676-77; *Texas Dep't of Pub. Safety v. Pruitt*, 75 S.W.3d 634, 640-41 (Tex. App.—San Antonio 2002, no pet.); *Texas Dep't of Safety v. Jones*, 938 S.W.2d 785, 787 (Tex. App.—Beaumont 1997, no pet.); *see also Texas Dep't of Pub. Safety v. Varme*, 262 S.W.3d 34, 41 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (officer's report constituted substantial evidence to support ALJ's finding that officer had probable cause to arrest individual for DWI);

*State v. Garrett*, 22 S.W.3d 650, 655 (Tex. App.—Austin 2000, no pet.) (finding probable cause existed to arrest defendant for DWI despite refusal of defendant to perform field sobriety tests).

We sustain DPS's first and third issues.[1]

We next address the evidence supporting the length of the suspension.[2] The length of the suspension is set by statute. "The period of suspension or denial is two years if the person's

---

[1] Suarez devotes much of her briefing on these issues to an argument that was not raised at either the administrative hearing or during the appeal before the trial court, specifically that Charleswell did not have the authority to arrest Suarez without a warrant because he did not actually observe her driving while intoxicated. *See* Tex. Code Crim. Proc. Ann. art. 14.01(b) (West 2005) ("A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view."). As DPS observes, because this argument was not raised below, it has been waived on appeal. *See* Tex. R. App. P. 33.1. However, even if this argument had been preserved, it would be without merit. Any peace officer may arrest, without a warrant, persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of a breach of the peace. *See* Tex. Code Crim. Proc. Ann. art. 14.03(a)(1) (West Supp. 2010). Driving while intoxicated is a breach of the peace. *Gallups v. State*, 151 S.W.3d 196, 201 (Tex. Crim. App. 2004). And, under the circumstances of this case as detailed in the police report, the apartment in which Suarez was found could properly be considered a suspicious place. *See id.* (concluding that defendant's home was suspicious place when defendant was found inside home, intoxicated, following accident in which defendant had abandoned his wrecked truck and walked home); *Hollis v. State*, 219 S.W.3d 446, 459 (Tex. App.—Austin 2007, no pet.) ("A place may become suspicious because of facts and circumstances known to the officer and any reasonable inferences that can be drawn from those facts.").

[2] As an initial matter, Suarez asserts, without citing to any authority, that this issue is not "ripe for review" because "the trial court did not address the length of the suspension determined by the ALJ, nor is it an issue that would warrant summarily reversing the ALJ's ruling." However, the ALJ did make a finding as to the length of the suspension, and the length of the suspension was one of the grounds argued by Suarez for reversing the ALJ's decision. Moreover, the ALJ's decision authorizes DPS to suspend Suarez's license for a period of two years, and that suspension will occur if the ALJ's decision is reinstated. On this record, we conclude that the length of the suspension is ripe for review. *See Mitz v. Texas State Bd. of Veterinary Med. Exam'rs*, 278 S.W.3d 17, 25-26 (Tex. App.—Austin 2008, pet. dism'd) (explaining ripeness doctrine); *cf. Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851-52 (Tex. 2000) ("A case is not ripe when determining whether the plaintiff has a concrete injury depends on contingent or hypothetical facts, or upon events that have not yet come to pass.").

driving record shows one or more alcohol-related or drug-related enforcement contacts, as defined by Section 524.001(3), during the 10 years preceding the date of the person's arrest." Tex. Transp. Code Ann. § 724.035(b). "Alcohol-related or drug-related enforcement contact" means, among other things, a driver's license suspension resulting from a refusal to submit to the taking of a breath or blood specimen following an arrest for an offense prohibiting the operation of a motor vehicle while intoxicated. *Id*. § 524.001(3)(B) (West Supp. 2010).

As we mentioned above, admitted into evidence at the administrative hearing was Suarez's driving record, which included an "enforcement action" showing a refusal-based suspension in 2009, which was within 10 years of Suarez's current arrest. At the hearing and before the trial court, Suarez asserted that this evidence was not sufficient to prove an "alcohol-related contact" because there was no indication in Suarez's driving record that her refusal followed an arrest. However, an arrest is a statutory prerequisite to the requesting of a specimen. *See id*. § 724.012(a) ("One or more specimens of a person's breath or blood may be taken *if the person is arrested . . . .*"), (b) ("A peace officer shall require the taking of a specimen of the person's breath or blood under any of the following circumstances *if the officer arrests the person . . . .*") (emphasis added) (West 2011). Thus, there can be no refusal of a specimen without the person first being arrested. Accordingly, the above evidence that Suarez's license was suspended based on a refusal to provide a specimen is also evidence that the refusal followed her arrest.

We sustain DPS's second issue.[3]

_____

[3] DPS also asserts for the first time on appeal that "the ALJ was not statutorily authorized to make a finding of fact or conclusion of law regarding the length of the suspension in the first place" and that DPS, not the ALJ, has sole authority to determine the suspension period. This argument was not raised at the trial court below, and we need not reach it on appeal.

10

**CONCLUSION**

We reverse the trial court's order and render judgment reinstating the ALJ's decision authorizing DPS to suspend Suarez's driver's license for a period of two years.

_____

Bob Pemberton, Justice

Before Justices Puryear, Pemberton and Rose

Reversed and Rendered

Filed:   August 25, 2011

11