

## NUMBERS 13-22-00616-CR, 13-22-00617-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

---

**THE STATE OF TEXAS,** **Appellant,**

**v.**

**CHRISTOPHER LYNN NEWTON,** **Appellee.**

---

## ON APPEAL FROM THE COUNTY COURT
## OF NAVARRO COUNTY, TEXAS

---

## OPINION

**Before Justices Benavides, Tijerina, and Silva**
**Memorandum Opinion by Justice Silva**

Appellant the State of Texas appeals the trial court's order granting appellee Christopher Lynn Newton's motion to suppress evidence acquired after his arrest for driving while intoxicated (DWI) and duty on striking a fixture. *See* TEX. CODE CRIM. PROC.

ANN. art. 44.01(a)(5) (permitting the State to appeal orders granting a motion to suppress). By four issues, which we construe as one with four subissues, the State argues that the trial court erred because (1) probable cause existed for Newton's arrest; (2) Newton's residence, where he was found and arrested, constituted a suspicious place; (3) Newton breached the peace by driving while intoxicated, causing a collision with a roadside fixture with his motor vehicle, and subsequently fleeing the scene; and (4) Newton was intoxicated in his front yard and presented a danger to himself or others, subjecting him to arrest for public intoxication. We reverse and remand.

## I. BACKGROUND[1]

Newton was charged by information and complaint with DWI with a prior conviction, a Class A misdemeanor, *see* TEX. PENAL CODE ANN. § 49.04(a) (DWI); *id.* § 49.09(a) (enhancing a DWI to a Class A misdemeanor when a defendant has been previously convicted of the offense), and failure to meet his duty on striking a fixture, a Class B misdemeanor. *See* TEX. TRANSP. CODE ANN. § 550.025(a), (b)(2). Newton moved to suppress his arrest and the evidence obtained thereafter, arguing that his arrest was unlawful. The trial court heard Newton's motion at a hearing where the following evidence was adduced.

Texas Department of Public Safety Trooper Matthew Ochoa testified that at 8:47 p.m. on May 28, 2022, while on duty, he was dispatched to investigate a single vehicle accident. Upon arriving at the scene of the crash, Trooper Ochoa identified and followed

---

[1] This appeal was transferred to this Court from the Tenth Court of Appeals in Waco by order of the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001 (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer).

skid marks from the scene to a nearby home where he discovered Newton's damaged truck.[2] According to Trooper Ochoa, the truck's "back end was pretty torn up" and the "rear axle had been twisted pretty significantly." Trooper Ochoa then approached the home to speak with the residents, making contact with Newton and his stepmother at 9:12 p.m.

Trooper Ochoa testified that Newton admitted to driving and while speaking with him, Trooper Ochoa noticed signs of intoxication; specifically, "[t]he odor of alcohol coming from his breath, slurred speech, [and] his eyes were dilated, bloodshot, [and] glassy." Newton initially denied drinking any alcohol but then stated that he had a glass of wine with his stepmother. This prompted Trooper Ochoa to perform the standardized field sobriety tests (SFSTs), to which Newton initially consented. However, after performing the horizontal gaze nystagmus test, Newton declined to participate any further. Trooper Ochoa then arrested Newton. Trooper Ochoa testified that he believed he had probable cause to arrest Newton.

On cross examination, Trooper Ochoa confirmed that there was nothing suspicious about Newton's presence at the home. Trooper Ochoa acknowledged that he did not witness Newton commit either of the charged offenses. However, Trooper Ochoa subsequently testified that Newton's presence at the home was suspicious, considering the totality of the circumstances.

---

[2] Trooper Ochoa's report was admitted, which identified the 9-1-1 caller and reported that "a black Ford F-250 had struck a guardrail and was attempting to flee the crash scene. The 9[-]1[-]1 caller provided the license plate number for the crashed vehicle and identified the driver as [Newton]."

3

Trooper Ochoa's body camera footage was admitted into evidence. The footage, by and large, corroborates Trooper Ochoa's testimony. Following Newton's arrest, Trooper Ochoa inspected Newton's truck, documented the damage from the accident, searched the bed of his truck, and looked through the windows with his flashlight. Trooper Ochoa also returned to the scene of the accident with Newton, where Newton explained to him how the accident occurred. Trooper Ochoa transported Newton to the local hospital where, upon arrival, Trooper Ochoa radioed to dispatch to call a magistrate to request a blood draw warrant. While awaiting the magistrate's arrival, Trooper Ochoa filled out the warrant, but the magistrate arrived before Trooper Ochoa could complete the warrant. Approximately fifteen minutes elapsed between the time the trooper radioed for the magistrate to be called and the time the magistrate handed the signed warrant back to Trooper Ochoa. A hospital nurse drew Newton's blood for testing and then Trooper Ochoa transported him to the Navarro County Jail, where he was booked.

The trial court granted Newton's motion to suppress, thereby excluding "[a]ll evidence . . . obtained by law enforcement after the arrest of [Newton]" as "fruit of the poisonous tree." The trial court entered findings of fact and conclusions of law. This appeal followed. *See* TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(5).

## II.    STANDARD OF REVIEW

We review the trial court's ruling on a motion to suppress evidence for an abuse of discretion, using a bifurcated standard. *See Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010); *Guzman v. State*, 955 S.W.2d 85, 88–89 (Tex. Crim. App. 1997). We give "almost total deference" to the trial court's findings of historical fact that are supported by

4

the record and to mixed questions of law and fact that turn on an evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 89. We review de novo the trial court's determination of the law and its application of law to facts that do not turn upon an evaluation of credibility and demeanor. *Id.*

When the trial court grants a motion to suppress and files accompanying findings of fact and conclusions of law, and the sole witness at the motion to suppress hearing is the arresting officer, the only question before us is whether the trial court properly applied the law to the facts it found. *See State v. Gray*, 158 S.W.3d 465, 467, 469 (Tex. Crim. App. 2005); *Guzman*, 955 S.W.2d at 86–87, 89. Therefore, although due weight "should be given to the inferences drawn by trial judges and law enforcement officers," probable cause determinations are reviewed de novo on appeal. *Guzman*, 955 S.W.2d at 87 (citing *Ornelas v. United States*, 517 U.S. 690, 697–98 (1996)). "We will uphold the trial judge's ruling if it is reasonably grounded in the record and correct on any theory of law applicable to the case." *Wade v. State*, 422 S.W.3d 661, 667 (Tex. Crim. App. 2013).

### III. APPLICABLE LAW

Warrantless arrests are governed by Article 14.03 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. art. 14.03. As relevant here, a peace officer may arrest a person "found in suspicious places and under circumstances which reasonably show that such persons have been guilty of . . . [a] breach of the peace." *Id.* art. 14.03(a)(1).

Few places, if any, are inherently suspicious. *LeCourias v. State*, 341 S.W.3d 483, 489 (Tex. App.—Houston [14th Dist.] 2011, no pet.). "A key element in determining

whether a site is a suspicious place is the time frame between the alleged offense and the apprehension of the suspect." *Id.* However, "[a]ny 'place' may become suspicious when a person at that location and the accompanying circumstances raise a reasonable belief that the person has committed a crime and exigent circumstances call for immediate action or detention by police." *Swain v. State*, 181 S.W.3d 359, 366 (Tex. Crim. App. 2005).

> Factors that may be considered [for exigent circumstances] include (1) whether the subject of probable cause is likely to leave the scene, (2) whether evidence of criminality is likely to be destroyed, degraded, or lost, and (3) whether the subject of probable cause poses a continuing and present danger to others.

*State v. McGuire*, No. PD-0984-19, 2024 WL 695765, at *6 (Tex. Crim. App. Feb. 21, 2024) (plurality op.) (citing *Dyar v. State*, 125 S.W.3d 460, 471 (Tex. Crim. App. 2003) (Cochran, J., concurring)). We may also consider how difficult or time-consuming it is to obtain a warrant in relation to the other factors. *See id.* The natural dissipation of alcohol in the blood may support a finding of exigency but it does not do so categorically. *Missouri v. McNeely*, 569 U.S. 141, 156 (2013); *see State v. Villarreal*, 475 S.W.3d 784, 797–98 (Tex. Crim. App. 2014).

> To establish probable cause to arrest, the evidence must show that at that moment of the arrest the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the arrested person had committed or was committing an offense.

*Parker v. State*, 206 S.W.3d 593, 596 (Tex. Crim. App. 2006) (cleaned up). "Probable cause is a 'fluid concept' that cannot be 'readily, or even usefully, reduced to a neat set of legal rules.'" *Baldwin v. State*, 278 S.W.3d 367, 371 (Tex. Crim. App. 2009) (quoting

6

*Maryland v. Pringle*, 540 U.S. 366, 370–71 (2003)). "Though the concept evades precise definition, it involves 'a reasonable ground for belief of guilt' that is 'particularized with respect to the person to be searched or seized.'" *Id.* (quoting *Pringle*, 540 U.S. at 371). Driving while intoxicated constitutes a breach of the peace under Article 14.03(a)(1). *Miles v. State*, 241 S.W.3d 28, 42–43 (Tex. Crim. App. 2007); *Polly v. State*, 533 S.W.3d 439, 442 (Tex. App.—San Antonio 2016, no pet.) (mem. op.); *see also* TEX. PENAL CODE ANN. § 49.04(a).

## IV. WAIVER

As a preliminary matter, Newton argues that the State failed to establish that exigent circumstances necessitated Newton's arrest and failed to challenge the trial court's finding that no exigent circumstances existed on appeal. *See State v. Copeland*, 501 S.W.3d 610, 613 (Tex. Crim. App. 2016) ("If the appellant fails to argue a 'theory of law' applicable to the case on appeal, that argument is forfeited."); *Barnett v. State*, 469 S.W.3d 245, 250 (Tex. App.—Fort Worth 2015, pet. ref'd) (concluding that the trial court's ruling on a motion to suppress must be affirmed because the appellant "fail[ed] to challenge a ground stated by the trial court in its findings of fact and conclusions of law"); *see also State v. Aviles*, No. 10-07-00371-CR, 2008 WL 976955, at *1–2 (Tex. App—Waco Apr. 9, 2008, no pet.) (mem. op., not designated for publication) (explaining that because the State, as the appellant, failed to challenge each ground for the trial court's ruling granting a motion to suppress the issue was waived).

The trial court found that "[t]here were no exigent circumstances justifying [Newton's] arrest without a warrant" and made the same conclusion of law. The State

does not challenge the finding or conclusion on appeal; rather, the State argues that the arrest was lawful because it had probable cause, Newton committed a breach of the peace, and his home was a suspicious place under the circumstances. The State also posits that Trooper Ochoa could have arrested Newton for public intoxication once Newton stepped into his front yard.[3] *See* TEX. PENAL CODE ANN. § 49.02(a) ("A person commits an offense if the person appears in a public place while intoxicated to the degree that the person may endanger the person or another."). However, because the State did not present its public intoxication theory to the trial court, we cannot reverse the trial court's order on that basis. *See Copeland*, 501 S.W.3d at 613 ("A 'theory of law' is applicable to the case if the theory was presented at trial in such a manner that the appellant was fairly called upon to present evidence on the issue.").

In *Swain*, the court of criminal appeals stated that "[a]ny 'place' may become suspicious when a person at that location and the accompanying circumstances raise a reasonable belief that the person has committed a crime and exigent circumstances call for immediate action or detention by police." 181 S.W.3d at 366 (citing *Gallups v. State*, 151 S.W.3d 196, 202 (Tex. Crim. App. 2004)). Since *Swain*, several intermediate courts have required a showing of exigent circumstances or otherwise found exigent circumstances to support a warrantless arrest. *See, e.g.*, *State v. McGuire*, 586 S.W.3d 451, 456–57 (Tex. App.—Houston [1st Dist.] 2019), *rev'd on other grounds*, No. PD-0984-19, 2024 WL 695765, at *6 (Tex. Crim. App. Feb. 21, 2024) (plurality op.); *Minassian v.*

---

[3] Although no evidence was presented specifically related to public intoxication, the State argues that Newton was a danger to himself and the public due to "numerous signs of intoxication" and because he was involved in a single-vehicle crash. The State further posits that Newton could have wandered into the street, "where a passerby could have struck him while in the roadway."

*State*, 490 S.W.3d 629, 637 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (describing *Swain* as holding that "warrantless arrest under [Article] 14.03(a)(1) requires [a] showing of exigent circumstances"); *Dansby v. State*, 530 S.W.3d 213, 222 (Tex. App.—Tyler 2017, pet. ref'd) (relying on *Swain* for the proposition that exigency must be established for a warrantless arrest under Article 14.03(a)(1)); *Lewis v. State*, 412 S.W.3d 794, 802–03 (Tex. App.—Amarillo 2013, no pet.) (same); *LeCourias*, 341 S.W.3d at 489 (same); *see also State v. Morales*, No. 08-09-00137-CR, 2010 WL 819126, at *2 (Tex. App.—El Paso Mar. 10, 2010, no pet.) (mem. op., not designated for publication) (same). Neither this Court nor the Tenth Court of Appeals, from which this case was transferred, has directly addressed whether Article 14.03(a)(1) requires exigent circumstances. *See* TEX. R. APP. P. 41.3.

The court of criminal appeals was recently confronted with this question. *See McGuire*, 2024 WL 695765, at *5. However, in a plurality opinion, the court declined to clarify whether its decision in *Swain* required exigent circumstances to effect an arrest under Article 14.03(a)(1); rather, the lead opinion concluded that determining whether Article 14.03(a)(1) required exigent circumstances would constitute an advisory opinion. *Id.* In contrast, the concurring opinion construed *Swain* as only considering exigency as "one circumstance in the totality" of circumstances examined; "it was not a particular requirement." *See id.* at *8 (Keel, J., concurring). We agree with the concurrence. It is important to note that the lead opinion in *McGuire* did not hold that *Swain* expressly added an exigent circumstances requirement to Article 14.03(a)(1). *Id.* at *4–5.

In a supplemental brief, Newton claims the lead opinion "found 'no need to

9

disavow' the requirement for exigent circumstances to make a lawful arrest." However, that is not what the lead opinion says. Rather, it states that "there is no need to disavow *Swain* at this time." *Id.* at *5. This distinction is important because Newton's claim necessarily includes a requirement for exigent circumstances while the actual language does not. *See id.* As noted, the lead opinion expressly declined to determine whether *Swain* created an exigency requirement under Article 14.03(a)(1). *See id.* at *4–5.

In *Swain*, the context of exigent circumstances arose because Swain was arrested at his place of employment, which, absent exigent circumstances, would not have been a suspicious place. *See Swain*, 181 S.W.3d at 366–67. Thus, in that context, the court of criminal appeals' statement makes sense: "*Any* 'place' may become suspicious when a person at that location and the accompanying circumstances raise a reasonable belief that the person has committed a crime and exigent circumstances call for immediate action or detention by police." *Id.* at 366 (emphasis added). Accordingly, rather than making exigent circumstances a requirement under Article 14.03(a)(3), the court of criminal appeals held that exigency is a factor that may turn otherwise nonsuspicious places into suspicious places. *See id.*

Additionally, in *Gallups*, which *Swain* cited to, law enforcement entered Gallups's home with his permission and arrested him without a warrant. *See* 151 S.W.3d at 202 ("[T]he circumstances surrounding appellant's warrantless home arrest raised a reasonable belief that appellant had committed a breach of the peace and that exigent circumstances (the need to ascertain appellant's blood-alcohol level) existed to justify appellant's immediate arrest."). There, the exigent circumstance of needing to ascertain

10

Gallups's blood alcohol content was a factor in considering whether his presence at his home was suspicious. *Id.* at 202.

Most importantly, nowhere in Article 14.03(a)(1) are the words "exigent circumstances" found, nor any word or words that may be construed as a synonym. *See* TEX. CODE CRIM. PROC. art. 14.03(a)(1). When construing a statute,

> "we necessarily focus our attention on the literal text of the statute in question and attempt to discern the fair, objective meaning of that text at the time of its enactment." This strict reading of the statutory language is necessary because "the text of the statute *is the law* in the sense that it is the only thing actually adopted by the legislators, probably through compromise, and submitted to the Governor."

*Whitfield v. State*, 430 S.W.3d 405, 408 (Tex. Crim. App. 2014) (quoting *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991)) (internal citations removed). Thus, our canons of statutory interpretation would prohibit the addition of exigency as a requirement for arrest under Article 14.03(a)(1) because it was not adopted by the legislators or submitted to the Governor with such. *See id.*

Accordingly, we conclude that Article 14.03(a)(1) does not include a requirement of exigent circumstances to support arrest. As such, the State did not waive any arguments by failing to address exigency. *See Copeland*, 501 S.W.3d at 613.

## V.     ARTICLE 14.03(a)(1)

We turn to the State's arguments that the arrest was appropriate under Article 14.03(a)(1) because there was probable cause for his arrest, he breached the peace, and he was found in a suspicious place. *See* TEX. CODE CRIM. PROC. art. 14.03(a)(1). First, we note that the basis of the trial court's ruling can be found in its findings of facts and conclusions of law. *See State v. Elias*, 339 S.W.3d 667, 674 (Tex. Crim. App. 2011). Thus,

11

we will not make "assumptions that may be entirely fictitious" and instead focus only on those findings and conclusions actually made.[4] *See id.* Here, based on the trial court's findings and conclusions, the trial court suppressed Newton's arrest because "[Newton] was not arrested in a suspicious place because he was at his home." *See* TEX. CODE CRIM. PROC. art. 14.03(a)(1). Accordingly, we focus our review on this conclusion.

Importantly, that Newton was at his home does not prevent it from being a suspicious place—courts have held homes to be suspicious places when an eyewitness to a suspected crime or breach of the peace, including DWI, followed a suspect to their home afterwards. *See, e.g.*, *Gallups*, 151 S.W.3d at 201 ("[U]nder the facts of this case, appellant's home, where he was arrested for driving while intoxicated soon after he walked there after abandoning his wrecked truck at the scene of an accident, was a 'suspicious place' under Article 14.03(a)(1) . . . ."); *Cook v. State*, 509 S.W.3d 591, 604 (Tex. App.—Fort Worth 2016, no pet.) (concluding appellant's apartment was a suspicious place in a warrantless DWI arrest where witness to driving followed the defendant to her apartment and called 9-1-1); *LeCourias*, 341 S.W.3d at 489 ("In the case under review, the area in front of the home where appellant was arrested was a suspicious

---

[4] We note that a DWI constitutes a breach of the peace, which could explain why the trial court did not conclude there was no breach of the peace. *Miles v. State*, 241 S.W.3d 28, 42–43 (Tex. Crim. App. 2007). Moreover, Trooper Ochoa's observations and the surrounding circumstances support probable cause to believe that Newton drove while intoxicated: (1) Newton admitted to driving and striking the guardrail; (2) rather than notifying law enforcement or calling for help, Newton left the scene in a vehicle that was heavily damaged and no longer suitable to drive; (3) within twenty minutes of the accident, Newton exhibited signs of intoxication such as red glossy eyes, slurred speech, and the smell of alcohol on his breath; (4) Newton exhibited six out of six signs of intoxication on the horizontal gaze nystagmus test; and (5) Newton refused to complete the remaining field sobriety tests. *See Parker v. State*, 206 S.W.3d 593, 596 (Tex. Crim. App. 2006); *State v. Cullen*, 227 S.W.3d 278, 282 (Tex. App.—San Antonio 2007, pet. ref'd) (collecting cases finding probable cause for a DWI arrest); *see also Tex. Dep't of Pub. Safety v. Bryan*, No. 13-21-00396-CV, 2023 WL 3240789, at *5 (Tex. App.—Corpus Christi–Edinburg May 4, 2023, no pet.) (mem. op.).

place because the officer reasonably could believe that, based on the surrounding circumstances, appellant drove while intoxicated and it was necessary to take prompt action to ascertain appellant's blood-alcohol level."); *Banda v. State*, 317 S.W.3d 903, 912 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("Under the particular facts of this case, we conclude that the area outside appellant's home where he was arrested was a suspicious place because the police could reasonably believe, based on the surrounding circumstances, that appellant drove while intoxicated and it was necessary to take prompt action in order to ascertain appellant's blood-alcohol level.").

The facts here are strikingly similar to many of the previously cited cases where an appellant's home was found to be a suspicious place. For example, after a single-vehicle accident, rather than staying on scene and calling for assistance or otherwise notifying law enforcement, Newton went home. *See Gallups*, 151 S.W.3d at 201. Moreover, approximately twenty-five minutes had elapsed between the 9-1-1 call and Trooper Ochoa's arrival at Newton's home. *See Cook*, 509 S.W.3d at 604–05; *Banda*, 317 S.W.3d at 912. It is of no consequence that Trooper Ochoa did not subjectively believe that Newton's home was suspicious. Reasonable suspicion, in the context of warrantless detentions, is determined through an objective standard rather than a subjective one. *See Elias*, 339 S.W.3d at 674. We see no reason to treat whether a place is suspicious by any other standard. *See id.*; *see also Moss v. State*, 75 S.W.3d 132, 137 (Tex. App.—San Antonio 2002, pet. ref'd) ("Whether [the appellant] was found in a suspicious place [is a] question[] we review under a *de novo* standard 'as [it is a] mixed questions of law and fact and do[es] not turn on an evaluation of credibility and

13

demeanor.'") (quoting *State v. Parson*, 988 S.W.2d 264, 267 (Tex. App.—San Antonio 1998, no pet.)).

We conclude that the trial court erred by concluding that Newton was not in a suspicious place because he was in his home. Accordingly, the trial court also erred in suppressing Newton's arrest and the subsequently obtained evidence.[5] *See* TEX. CODE CRIM. PROC. art. 14.03(a)(1). We sustain the State's sole issue.

## VI.    CONCLUSION

We reverse the trial court's judgment and remand the case for further proceedings.

CLARISSA SILVA
Justice

Publish.
TEX. R. APP. P. 47.2(b)

Delivered and filed on the
18th day of April, 2024.

---

[5] The trial court also concluded Newton's warrantless arrest violated the "Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution [and] Article I, Sections 9, 10[,] and 19 of the Constitution of the State of Texas." However, it appears the trial court erroneously concluded that a warrantless arrest unauthorized by Article 14.03(a)(1) also violates the enumerated constitutional rights. Newton did not argue that Trooper Ochoa violated any of his constitutional rights nor was evidence adduced that would support that such occurred. *See Parker v. State*, 206 S.W.3d 593, 596–97 (Tex. Crim. App. 2006) (discussing the distinctions between the requirements for a warrantless arrest and warrantless entry into a home). There was no evidence that Trooper Ochoa ever entered Newton's home such that would necessitate exigent circumstances; indeed, the body camera footage conclusively disproves as much. *See id.* Thus, the trial court's finding that Newton was arrested "from his home"—as opposed to "from *inside* his home"—seems to relate solely to whether he was in a suspicious place. *See* TEX. CODE CRIM. PROC. art. 14.03(a)(1). This conclusion is supported by Newton's own brief, which limits his waiver argument to exigent circumstances under Article 14.03(a)(1), not under the Fourth Amendment or Article 1, § 9 of the Texas Constitution. But, to the extent it is necessary to do so, we conclude the trial court similarly erred in concluding Newton's arrest violated his constitutional rights. *See Parker*, 206 S.W.3d at 596–97.

14