

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. PD-0409-22

---

### JOSHUA RAY ARMSTRONG, Appellant

### v.

### THE STATE OF TEXAS, Appellee

---

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIFTH COURT OF APPEALS
### GRAYSON COUNTY

---

McClure, J., delivered the opinion of the Court in which Schenck, P.J., Richardson, Newell, Walker, and Parker, JJ., joined. Yeary, J., filed a concurring opinion in which Schenck, P.J., and Finley, J., joined. Newell, J., filed a concurring opinion in which Richardson and Walker, JJ., joined. Keel, J., concurred.

### **O P I N I O N**

Today we address TEX. CODE CRIM. PROC. art. 14.03(a)(1), which has been described as "the most troublesome statutory provision authorizing a warrantless arrest." George E.

Dix & Robert Dawson, Texas Practice: Criminal Texas Practice and Procedure § 9.61 at 555 (2d ed. 2001). This article permits the warrantless arrest of a person found in a suspicious place and under circumstances which reasonably show that an offense has been or is about to be committed. Since the term "suspicious places" is not defined within the Code, some intermediate courts interpret this section to require "exigent circumstances" for a warrantless arrest, while other courts view exigency as a consideration rather than a necessity. Consequently, the central issue in this case is whether an exigency requirement exists for warrantless arrests. We conclude that it does not.

## I.      BACKGROUND

On the morning of August 12, 2019, Officer Logan Rogers received a dispatch call about a vehicle that was driving erratically and suspiciously within the courtyard of the Steeple Chase apartment complex. The 911 caller described the vehicle as a white Chevrolet pickup with a deer sticker on the back window. Officer Rogers learned that the license plate of the vehicle was registered to Joshua Armstrong. Officer Rogers, and the other responding officers, located the vehicle, which was parked and unoccupied near Building 7, where the 911 caller had indicated it was parked.

Officer Rogers talked to both Lacy Starnes, the 911 caller, and James Douglas, a witness, who both informed the officer that the white truck located near Building 7 was the vehicle that had been driving erratically in the apartment courtyard. Both Starnes and Douglas indicated to Officer Rogers that a truck drove through the complex, driving onto the grassy part of the courtyard where pedestrians walked and the playground was located,

and when the bystanders tried to go talk to the driver, the driver tried to elude them. Douglas indicated that based on his observations, he believed the driver may have been intoxicated. Both Starnes and Douglas described the driver of the truck as a white male with dark-colored hair and dark-colored goatee, several tattoos on his arms, and wearing a red shirt.

During the investigation, a Steeple Chase resident indicated to officers which of the apartments the driver of the white truck lived in. Based on that information, Officer Rogers proceeded to that apartment and knocked on the door. A woman, Kelci Helvey, who was later identified as having an "off and on" relationship with Appellant, answered the door. Officer Rogers asked Helvey to go back inside and have the driver of the white pickup come out to talk to police. A short time later, Helvey came outside with Appellant. Appellant matched the description of the driver of the white pickup given by the witnesses. Helvey identified Appellant as the owner and driver of the white pickup. Officer Rogers observed Appellant "profusely sweating," being "obviously erratic," "unstable on his feet," and "just jerking around quite a bit." When asked about the white truck, Appellant seemed confused and told the officer that it was his, but he wasn't driving it and claimed that he did not remember driving the truck that day.

Officer Rogers immediately determined that Appellant was intoxicated because he had difficulty focusing on the officer's questions and did not seem to be cognitively present. The officer testified that he had experience and training identifying different drugs, both illegal and prescription, as well as what to look for in a suspect who has ingested a drug.

Appellant told Officer Rogers that he had just awoken but admitted having been out with friends the previous night "partying and drinking." Appellant admitted to taking Suboxone, a prescription drug used to treat opioid addiction. Officer Rogers decided not to perform any standardized field sobriety tests because he did not believe it would be safe for Appellant to attempt those tests.

Officer Rogers interviewed Helvey separately and she told Officer Rogers that Appellant did not live with her and that he had come by her home earlier that morning. She indicated that she had Appellant leave because he was intoxicated, but he then returned right before the police arrived.

Inside the apartment, Officer Rogers observed a red shirt which was identified by the witnesses as the color shirt the erratic driver of the white pickup was wearing. Helvey told Officer Rogers that Appellant had been wearing that red shirt when he arrived at her apartment in Building 7 that day. The shirt was wet, consistent with Officer Rogers' testimony that Appellant was profusely sweating. The officers had reason to believe that Appellant was guilty of an intoxication offense (a breach of the peace). Therefore, the officers arrested Appellant for driving while intoxicated (DWI) without obtaining an arrest warrant.

Before trial, Appellant moved to suppress blood-test results, arguing that his warrantless arrest for driving while intoxicated was not supported by exigent circumstances as required by TEX. CODE CRIM. PROC. art. 14.03. He argued that the evidence was not obtained pursuant to an arrest warrant and there were not exigent circumstances to justify

his warrantless arrest. The trial court denied Appellant's motion to suppress, and he was found guilty by a jury of DWI.

## II.    COURT OF APPEALS

On appeal, Appellant argued that in the absence of exigent circumstances, his warrantless arrest was illegal. The Fifth Court of Appeals agreed and reversed and remanded, holding that the State failed to meet its burden and establish that exigent circumstances existed to justify Appellant's warrantless arrest. In coming to this conclusion, the court of appeals relied on *State v. McGuire*, 586 S.W.3d 451, 461 (Tex. App.—Houston [1st Dist.] 2019), *reversed on other grounds by State v. McGuire*, 689 S.W.3d 596 (Tex. Crim. App. 2024) (plurality op.), *reh'g denied* (June 19, 2024).  In *McGuire*, the First Court of Appeals concluded that without evidence or argument that an exigency existed, the State failed to meet its burden to establish that the Appellee's warrantless arrest was authorized under Article 14.03(a)(1). 586 S.W.3d at 459.[1]

## III.    CONSTRUING "SUSPICIOUS PLACES" IN ARTICLE 14.03(a)(1)

Statutory construction is a question of law, which we review *de novo. Ramos v. State*, 303 S.W.3d 302, 306 (Tex. Crim. App. 2009). "Statutory construction depends on the plain meaning of the statute's language unless it is ambiguous or the plain meaning

---

[1] This Court granted the State's petition for discretionary review (PDR), which included an argument that Article 14.03(a)(1) does not impose an exigency requirement for warrantless arrests. However, a plurality of the Court did not squarely reach that question, stating, "Regardless of whether exigent circumstances are absolutely required under Article 14.03(a)(1), we find that there were exigent circumstances in this case to justify a warrantless arrest." *McGuire*, 689 S.W.3d 596 at 603-04. The Court acknowledged that there could be future cases with facts that might not meet the criteria of Article 14.03(a)(1), referencing the current case as a footnote.

would lead to absurd results that the legislature could not have possibly intended." *Lopez v. State*, 600 S.W.3d 43, 45 (Tex. Crim. App. 2020). To determine plain meaning, we read the statute in context and give effect to each word, phrase, clause, and sentence if reasonably possible, and we construe them "according to any applicable technical definitions and otherwise according to the rules of grammar and common usage." *Id.* If the plain meaning is not ambiguous and does not lead to absurd results, we do not consider extratextual factors. *Id.*

The seminal rule of statutory construction is to presume that the legislature meant what it said. *Seals v. State*, 187 S.W.3d 417, 421 (Tex. Crim. App. 2005). In adhering to this rule, we show our respect for the legislature and recognize that if it enacted into law something different from what it intended, it should amend the statute to conform to its intent. *Getts v. State*, 155 S.W.3d 153, 158 (Tex. Crim. App. 2005) (citing *Lamie v. United States Trustee*, 540 U.S. 526, 542, 124 S. Ct. 1023, 1034, 157 L. Ed. 2d 1024 (2004) ("It is beyond our province to rescue Congress from its drafting errors, and to provide for what we might think . . . is the preferred result.")).

### a. The terms "exigency" or "exigent circumstances" do not appear in the statute.

Neither the U.S. Constitution nor the Texas Constitution requires a warrant for making arrests in public. However, Texas law requires that there must be statutory authority for an arrest when it is conducted without a warrant. Texas Code of Criminal Procedure 14.03(a)(1) provides one such avenue of authority for warrantless arrests:

> Any peace officer may arrest, without warrant . . . persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some felony, violation of Title 9, Chapter 42, Penal Code, breach of the peace, or offense under Section 49.02, Penal Code, or are about to commit some offense against the laws; . . ..

TEX. CODE CRIM. PROC. art. 14.03(a)(1).

By enaction of the warrantless arrest exceptions, the Legislature meant to limit the number of warrantless arrest scenarios and not simply restate the constitutional norm to curtail the arrest or detention of persons on less than probable cause or reasonable suspicion. Therefore, to justify a warrantless arrest under this article, there must be a showing that (1) appellant was found in a suspicious place and (2) that he was found under circumstances which reasonably show an offense has been or is about to be committed. While the phrase "or are about to commit" arguably implies that someone is on the brink of taking an imminent illegal action that would necessitate police taking preventative and immediate action, exigency is not listed as one of Article 14.03(a)(1)'s elements.

The absence of an exigency requirement seems intentional. After all, the Legislature is fully capable of establishing an exigency requirement when it chooses to do so. For example, Articles 14.03, 14.04, and 14.05 embrace exigency as a condition, and do so expressly. Article 14.04 authorized a warrantless arrest of a felon about to escape such "that there is no time to procure a warrant[.]" *See Miles v. State*, 241 S.W.3d 28, 42 (Tex. Crim. App. 2007) (Article 14.04 requires the exigency of escape). This provision remains precisely the same today as it did when enacted. In 1981, another exigency-inclusive provision was enacted through subsection (b) to Article 14.03. TEX. CODE CRIM. PROC. art.

14.03(b) focused entirely on assault causing bodily injury and was manifestly intended to prevent further injury. Acts 1981, 67th Leg. R.S., ch. 442 (H.B. 1743), § 1, p. 1865, eff. Aug. 31, 1981. It authorized an arrest when there was probable cause to believe (1) a bodily injury assault occurred and (2) there is an "immediate danger" of further bodily injury. *Id*. Four years later, the Legislature removed "immediate" as a modifier to the "danger" element. Acts 1985, 69th Leg., ch. 583 (S.B. 869), § 3, p. 2203, eff. Sept. 1, 1985. This deliberate removal reveals a legislative intent to slightly broaden the warrantless arrest exception, while still cabining it by leaving a version of the exigency requirement intact. Another subsequent provision was amended to create an exigency-like element in 1987. TEX. CODE CRIM. PROC. art. 14.05 was amended to prohibit an officer from making a warrantless arrest inside a residence unless "exigent circumstances" require entry without consent or a warrant. Acts 1987, 70th Leg., ch. 532 (H.B. 1175), § 1, pp. 2150–51, eff. Aug. 31, 1987. Each of these instances exhibits the Legislature's careful consideration of the exigency requirement.

> **b. While "suspicious places" is not defined, Article 14.03(a)(1) is not ambiguous.**

"Suspicious places" is not defined in the Texas Penal Code or the Texas Code of Criminal Procedure. Accordingly, the term must be interpreted according to its common usage. *See Stahmann v. State,* 602 S.W.3d 573, 578 (Tex. Crim. App. 2020); *Williams v. State,* 270 S.W.3d 140, 146 (Tex. Crim. App. 2008). "We must look to the plain and ordinary meaning of the word, precedent, and the most suitable canons of statutory construction to advise us." For the plain and ordinary meaning of "suspicious" and

"places," we turn to dictionaries. *Ex parte Reeder*, 691 S.W.3d 628, 634 (Tex. Crim. App. 2024).

Merriam-Webster's Collegiate Dictionary defines "suspicious" in part as "1: tending to arouse suspicion: questionable 2: disposed to suspect: distrustful 3: expressing or indicative of suspicion." *Suspicious*, Merriam-Webster's Collegiate Dictionary (11th ed. 2004). Suspicion is defined as "1a: the act or an instance of suspecting something wrong without proof or on slight evidence: mistrust 1b: a state of mental uneasiness and uncertainty: doubt 2: a barely detectable amount: trace." *Suspicion*, Merriam-Webster's Collegiate Dictionary (11th ed. 2004). "Places" (the plural of place) is defined in Merriam-Webster's as "a: physical environment: space b: a way for admission or transit c: physical surroundings: atmosphere. *Place*, Merriam-Webster's Collegiate Dictionary (11th ed. 2004).

What is noticeably absent from these definitions is the term exigency. Because the dictionary definitions of "suspicious" and "place" do not depend on any sort of exigency, the plain language of the statute makes apparent that a physical environment becomes suspicious when a set of circumstances lead someone to suspect something is amiss, not that immediate action needs to be taken. And unlike reasonable suspicion, which is defined as a "particularized and objective basis, supported by specific and articulable facts, for suspecting a person of criminal activity," Article 14.03(a)(1) does not require the circumstances to be from an objective or reasonable person perspective. *See* Black's Law Dictionary (9th ed. 2009). A place can be suspicious based on "inconclusive or slight

evidence, or possibly even no evidence." *Suspicion*, Black's Law Dictionary (10th ed. 2014).

The determination of whether a place is suspicious requires a "highly fact-specific analysis." *Dyar,* 125 S.W.3d at *468*. "Additional facts available to an officer plus reasonable inferences from those facts in relation to a particular place" may justifiably render a place suspicious from a police officer's perspective. *Johnson*, 722 S.W.2d at 421. Though several different factors "may be used to justify the determination of a place as suspicious," this Court and a number of the intermediate courts have consequently found suspects lawfully arrested in "suspicious places" where (1) the suspect was arrested at a crime scene or somewhere linked to it, (2) shortly after a crime had taken place, and (3) the totality of the facts known to the police officer objectively point to the suspect's guilt in the commission of a felony or other breach of the peace under 14.03(a)(1). *See Dyar*, 125 S.W.3d at 467 (detailing how Dyar was arrested for DWI after he was found by police still bleeding from his mouth minutes after wrecking his truck and walking on foot to his nearby home); *see also Johnson*, 722 S.W.2d at 419-20 (detailing how Johnson arrived at an apartment where the police were actively investigating a stabbing, claiming that he was a "maintenance man" who had been called to the apartment to clean up mess from a stabbing, and arousing police suspicion further that (1) Johnson roughly matched the witness's description, (2) there was no sign of forced entry, (3) Johnson's set of master keys were found in the hallway in front of the door to the murder scene, (4) Johnson arrived on the scene minutes after police and offered an odd explanation for being there, and (5)

blood was found on his pants); *see also Goldberg v. State*, 95 S.W.3d 345, 363 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (holding that appellant's father's house was a "suspicious place" because the car that the eyewitness identified at the scene was parked there and "connected the defendant to the crime scene").

Consistent with this approach, when determining whether a "suspicious place" exists, a court must conduct a fact-specific inquiry made on a case-by-case basis, considering the totality of the circumstances, and without an exigency requirement.

> ### c. Our caselaw has required exigency under the facts of particular cases because a showing of exigency was necessary to satisfy other statutory requirements and not the suspicious place requirement.

In *Dyar v. State*, this Court addressed whether the "suspicious place" requirement of Art. 14.03(a)(1) was met. 125 S.W.3d 460 (Tex. Crim. App. 2003). Dyar argued that the hospital where he was arrested was not a "suspicious place." This Court recognized that many reviewing courts in Texas have consistently used the totality of the circumstances test for deciding whether an arrest is proper under Article 14.03(a)(1) and reaffirmed the use of said test. *Id*. at 468. The Court concluded that, under the totality of the circumstances test, the accident scene coupled with Trooper Thompson's observations at the hospital constituted the "suspicious place" leading to Dyar's lawful arrest. *Id*.

In a concurring opinion, Judge Cochran added her "fond hope that the Texas Legislature will one day revise article 14.03(a)(1) to clarify the meaning of the "suspicious places" language in the statute." Judge Cochran reiterated Professor Gerald Reamey's concern that Article 14.03(a)(1) could, in practice, result in an unfettered crime-scene warrant

exception. *Id.* at 468–71 (Cochran, J., concurring); Gerald S. Reamey, Arrests in Texas's "Suspicious Places": A Rule in Search of Reason, 31 TEX. TECH L. REV. 931 (2000). Professor Reamey suggested than an exigency requirement should be applied to the "suspicious places" stipulation in Article 14.03(a)(1). With this article in mind, Judge Cochran examined the relevant caselaw and concluded that "we might do well to explain our prior holdings under the organizational principle of exigent circumstances." *Dyar*, 125 S.W.3d at 470. She proposed interpreting the statute in this manner: when law enforcement has probable cause to believe that someone has committed a felony and he is found in a particular location under suspicious circumstances, and there is no time to obtain a warrant, then the police may arrest the suspect without a warrant. *Id.* at 471. Judge Cochran concluded that, "[u]ntil and unless the Legislature provides more precise language in article 14.03, I believe that this construction best adheres to the legitimate historical purpose and scope of the statute." *Id.*

A year later in *Gallups v. State*, the defendant challenged the legality of his warrantless arrest at his home. 151 S.W.3d 196 (Tex. Crim. App. 2004). This Court concluded that the arrest met the requirements of Art. 14.05(1) and Art. 14.03(a)(1). The Court noted that both statutes are "more protective" than the Fourth Amendment and deciding whether a home can meet the "suspicious place" requirement of Art. 14.03(a)(1) is "not inconsistent with these heightened privacy protections." In other words, the Court said, "the circumstances surrounding appellant's warrantless home arrest raised a reasonable belief that appellant had committed a breach of the peace and that exigent circumstances (the need to ascertain

appellant's blood-alcohol level) existed to justify appellant's immediate arrest." *Id.* at 202. Given that the arrest took place in a residence, the Court's focus was on whether exigent circumstances complied with the U.S. Constitution rather than the "suspicious places" aspect of the Code of Criminal Procedure.

In *Swain v. State*, 181 S.W.3d 359 (Tex. Crim. App. 2005), the two arresting detectives gave different testimony on when they arrested the appellant—one said that the appellant was arrested in the residential-treatment home where the appellant worked, and the other said that the appellant was not arrested until he was later placed in the police car. *Id.* at 365–66. Swain's specific argument was that the statements that he later gave to the detectives were inadmissible because his warrantless arrest at the residential-treatment home was illegal. *Id.* Without resolving where or when the detectives arrested the appellant, this Court wrote, "If appellant was arrested at the residential treatment home, then his warrantless arrest was authorized under Article 14.03(a)(1)." *Id.* at 367. The Court also stated, "Article 14.03(a)(1) authorizes the warrantless arrest of a person found in a suspicious place and under circumstances which reasonably show that an offense has been or is about to be committed. Any 'place' may become suspicious when a person at that location and the accompanying circumstances raise a reasonable belief that the person has committed a crime and exigent circumstances call for immediate action or detention by police." *Swain*, 181 S.W.3d at 366.

Unfortunately, *Swain* appeared to cite *Gallups* and *Dyar* as though Art. 14.03(a)(1) requires a showing of exigent circumstances. Following *Swain*, at least five intermediate

courts, including the court below, have concluded that exigency is required to show a place is suspicious.[2]

However, *Swain* did not hold that exigency is always required under Article 14.03(a)(1). When reviewing the trial court's ruling denying Swain's motion to suppress based on his alleged warrantless arrest, this Court held that Swain had not been under arrest when he incriminated himself when talking with the police at his workplace. 181 S.W.3d at 366. Nevertheless, the Court added that, even assuming he had been arrested, it was authorized by Article 14.03(a)(1) because he was in a suspicious place and there was probable cause and exigent circumstances. *Id*. at 366–67 (holding that the defendant's arrest at his workplace was justified because he admitted breaking into the missing victim's house, beating her, and leaving her in a remote location, and the police needed to prevent his flight and find the victim). It is worth noting here that probable cause existed in this case, regardless of any exigent circumstances. This illustrates that an exigency requirement would not deter an arrest on less than probable cause or reasonable suspicion, as exigency cannot compensate for the absence of probable cause or reasonable suspicion regarding the commission of an offense.

---

[2] *See, e.g.*, *Minassian v. State*, 490 S.W.3d 629, 637 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (describing *Swain* as holding that "warrantless arrest under Section 14.03(a)(1) requires showing of exigent circumstances" and concluding that risk of destruction of computer-data evidence on laptops established exigency); *Polly v. State*, 533 S.W.3d 439, 443 & n.4 (Tex. App.—San Antonio 2016, no pet.) (relying on *Swain* for proposition that exigency must be established for warrantless arrest under Article 14.03(a)(1)); *see also Cook v. State*, 509 S.W.3d 591, 603–04 (Tex. App.—Fort Worth 2016, no pet.); *LeCourias v. State*, 341 S.W.3d 483, 489 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *State v. Morales*, No. 08-09-00137-CR, 2010 WL 819126, at *2 (Tex. App.—El Paso Mar. 10, 2010, no pet.) (mem. op., not designated for publication).

A close review of *Swain* reveals that its reference to exigent circumstances is not relevant. First, when the Court later referenced *Dyar*, it merely restated dicta. Judge Cochran's concurrence in *Dyar* offered a suggestion, but did not establish a new holding or revision of the statute. Neither *Gallups* nor *Swain* clearly adopted the concurrence in *Dyar* as binding law. Second, neither *Gallups* nor *Swain* announced a new exigency rule but instead, held that exigency was merely one factor to consider in the totality of the circumstances. *McGuire*, 689 S.W.3d at 608 (Keel, J., concurring). Finally, neither *Gallups* nor *Swain* disavowed the holding in *Dyar* that the use of the totality of the circumstances test is the proper vehicle for deciding whether a warrantless arrest is proper under Article 14.03(a)(1). Therefore, we conclude that neither the plain text of Article 14.03 nor our caselaw imposes an exigency requirement.

## IV.    ANALYSIS

### i.    Motion to Suppress Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Lerma v. State*, 543 S.W.3d 184, 189–90 (Tex. Crim. App. 2018). At the hearing on the motion, the trial court is the sole factfinder and judge of the credibility of the witnesses and of the weight to be given their testimony. *Id.* at 190. We therefore afford almost complete deference to the trial court's determinations of historical facts. *Id.* But we review de novo the legal significance of the facts found by the trial court. *Ramirez-Tamayo v. State*, 537 S.W.3d 29, 35 (Tex. Crim. App. 2017).

We must view the evidence in the light most favorable to the trial court's decision on the motion. *State v. Garcia*, 569 S.W.3d 142, 152–53 (Tex. Crim. App. 2018).

We sustain the trial court's decision on the motion if it is correct under any applicable theory of law. *State v. Cortez*, 543 S.W.3d 198, 203 (Tex. Crim. App. 2018). We may reverse only when the decision is arbitrary, unreasonable, or outside the zone of reasonable disagreement. *Id.*

In a suppression hearing, the burden of proof is initially upon the defendant. *Russell v. State*, 717 S.W.2d 7, 9 (Tex. Crim. App. 1986). Once the defendant establishes a warrantless arrest, the burden of proof shifts to the State. *Id*. The State may satisfy this burden by showing that one of the statutory exceptions to the warrant requirement is met. *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005). The trial judge's decision should be upheld if it is correct on any theory of law applicable to the case. *Swain*, 181 S.W.3d at 365.

### ii. Remand

A police officer may arrest an individual without a warrant only if (1) there is probable cause with respect to that individual, and (2) the arrest falls within one of the exceptions specified in articles 14.01 through 14.04 of the code of criminal procedure. Appellant was arrested without a warrant for DWI. Before trial, he filed a motion to suppress the evidence obtained as a result of his arrest, arguing, among other things, that no exigent circumstances

justified his arrest.[3] The trial court denied the motion. On appeal, he argued that the trial court erred in denying his motion to suppress. The court of appeals found that Article 14.03(a)(1) required a showing of exigent circumstances. Since this is not a requirement, the lower court erred to hold that exigent circumstances are required to justify a warrantless arrest under Article 14.03(a)(1).

Because the court below has not yet applied the totality of the circumstances test for deciding Appellant's arrest was proper under Article 14.03(a)(1), the proper disposition here is to remand this case to the court of appeals for it to reach a decision on that issue.

## V.  CONCLUSION

The scope of our review in this case is quite narrow. The issue before this Court is limited to whether Article 14.03(a)(1) includes an exigency requirement. Our conclusion is a definitive no. We have not been tasked with creating a test as to what makes a place suspicious nor were we asked to provide any missing substance that Article 14.03(a)(1) is lacking. It is not our role to elaborate on the statute's language. *See Wells v. State*, 2025 Tex. Crim. App. LEXIS 210, fn. 4 (Tex. Crim. App., Apr. 2, 2025) (stating we will not address an argument that has not been raised in either the court of appeals or this Court). After all, introducing exigency into the statute's framework led us to this situation initially.

---

[3]Appellant also argued that his warrantless arrest for DWI was not supported by probable cause. The appellate court disagreed holding that, "[g]iven the eyewitness testimony, the short time period between when appellant was seen driving and when he was found by the police, and the results of the blood test, we conclude the evidence is sufficient to support the jury's finding that appellant was intoxicated at the time he was driving." *See Armstrong  v. State*, No. 05-21-00333-CR, 2022 WL 2816540, at *4 (Tex. App.—Dallas July 19, 2022). Since probable cause is not challenged in this proceeding, we will not revisit the issue.

Thus, we trust the lower court's ability to ascertain whether the Applicant was found in a suspicious location given the specific details of this case. Exigent circumstances, while could be considered as a factor as to whether a place is suspicious, are not required for purposes of determining the legality of a warrantless arrest. Therefore, we vacate the judgment of the court of appeals and remand for further proceedings consistent with this opinion.

Delivered: May 28, 2025

Publish